(156 App. Div. 117.)

### MITCHELL v. DUNMORE REALTY CO. et al.

(Supreme Court, Appellate Division, First Department. April 4, 1913.)

1. CONTRACTS (§ 239*)—MODIFICATION—WRITTEN CONTRACT.

 A written contract under seal cannot be modified by a subsequent executory parol contract, and such parol contract, so far as it is still executory, may be repudiated, and the terms of the original contract enforced.

 [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1124; Dec. Dig. § 239.*]

2. CONTRACTS (§ 239*)—MODIFICATION—EFFECT.

 In so far as a parol contract modifying a written contract under seal has been executed, it is binding, and money paid thereunder cannot be recovered.

 [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1124; Dec. Dig. § 239.*]

3. CONTRACTS (§ 239*)—BUILDING CONTRACT—COMPENSATION—EXTRA WORK.

 Where plaintiff, having a written contract under seal with defendant for the construction of a building, not providing for extra work, upon defendant's express orders performed extra work entirely outside of and independent of the contract, such work did not come within a provision of the contract as to payment upon full completion, and hence plaintiff was entitled to recover therefor, although he did not complete the contract.

 [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1124; Dec. Dig. § 239.*]

Appeal from Special Term, New York County.

Action by Donald Mitchell against the Dunmore Realty Company, John L. Murray, and others. From a judgment dismissing the complaint on the merits, plaintiff appeals. Reversed, and new trial ordered.

See, also, 136 App. Div. 933, 120 N. Y. Supp. 1136.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Howard A. Sperry, of New York City (Walter H. Dodd, of New York City, of counsel), for appellant.

Heinsheimer & Falk (Norbert Heinsheimer, of New York City, of counsel, and W. B. Symes, on the brief), for respondent Murray.

CLARKE, J. This was an action to foreclose a mechanic's lien. This court having determined on an interlocutory appeal that the notice of lien was invalid (126 App. Div. 829, 111 N. Y. Supp. 322), a jury was waived upon the trial, and the case proceeded as an action for a personal judgment. By consent the claim between the Dunmore

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Realty Company and the plaintiff was settled and discontinued, so that the controversy is between the plaintiff and John L. Murray, the other defendants, subcontractors, having stipulated that their right to a recovery depended wholly upon the success of the plaintiff.

The Dunmore Realty Company was the owner of a certain lot with the building thereon in the city of New York. It made a long-term lease thereof to the defendant Murray. The plaintiff and Murray on August 16, 1906, executed a contract under seal, by which the plaintiff agreed to provide all the materials and perform all the work for the construction, alteration, improvement, completion, and equipment of the building according to and as shown on the drawings and described in the plans and specifications prepared by Messrs. Buckman & Fox, architects.

It was agreed:

"That the work included in this contract is to be done under the direction of the said architects and that their decision as to the true construction and meaning of the drawings and specifications shall be final;" that "no alterations shall be made in the work, except upon written order of the architects; the amount to be paid by the lessee or allowed by the contractor by virtue of such alterations to be stated in said order. Should the lessee and contractor not agree as to the amount to be paid or allowed, the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration as hereinafter provided."

The contract contained the usual provisions as to diligence, abandonment, delay, etc. The work was to be completed on or before December 1, 1906. The contract also contained the following clauses:

"It is hereby mutually agreed between the parties hereto that the sum to be paid by the lessee to the contractor for said work and materials shall be $84,500, upon the understanding that the following items included in said specifications shall not exceed the sum set opposite thereto respectively, to wit: Steam heating and ventilation, $10,000; elevator work, $3,000; plumbing work, $8,000; electrical work, $8,000. And in the event that said items shall be done for less than said sums, then the contractor shall allow deductions to the lessee accordingly, and if such items should exceed the said amounts then such additional payments shall be due to the contractor, subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the lessee to the contractor, only upon certificates of the architects, as follows: In cash, the sum of $57,250, and the balance in two equal negotiable promissory notes at 6% interest and dated the day of final payment, upon completion of said work as certified by the architects, executed by said Murray to the order of said contractor and due in three and six months after date respectively. The Dunmore Realty Company, the landlord of said premises, has agreed in its lease of said premises, to expend towards the alterations thereof the sum of at least $65,000, and in compliance therewith the sum of at least $30,000 shall be applied towards the payments of work hereunder and shall be disbursed in accordance with an agreement of even date herewith between said company and Murray. The cash payment hereunder shall be made in installments as the work progresses, upon the presentation to the lessee of the written certificate of the architects to the effect that such work has been done and of the proportionate value thereof. Fifteen per centum of the value of all work done and materials furnished shall be held back, however, and not certified until the contractor has received, less such fifteen per centum, the total cash payable hereunder, when, upon a certificate from the architects of further amounts due, the contractor shall receive further cash payment out of such fifteen per centum so held back until he shall have received all the cash payable hereunder.

No such certificate furnished by the architects shall be payable until all subcontractors and materialmen have been paid for work done at the time of the architects' last certificate. The final payment shall be made upon fulfillment of this contract and shall consist of two promissory notes, which notes shall be taken as and be full payment hereunder. * * * 'And before the final payment shall be made hereunder by the delivery of said notes, the contractor shall produce and file with the architects duly acknowledged receipts of full payment from every subcontractor and materialman engaged upon said work and also the county clerk's certificate that no liens exist of record against said building and premises and said contractor. * * * The final payment shall be made as above stated upon the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued."

There was a further provision for arbitration in case of a disagreement.

The complaint alleges that the amount of the contract price for the work and labor included in said contract was $100,121.70; that soon after the making of the said contract, and for value, it was mutually agreed that the same should be, and it was, then and there modified so that the requirement that no alterations should be made except upon the written order of the architects was waived, abandoned, and rescinded; that the time for the completion was extended; that in March, 1907, after the work included in the contract had been partly completed, and after the cash payment of $57,250 mentioned in the contract had been paid on account thereof and for value, the contract was further modified that the requirements that payments should be made upon the presentation of written certificates of the architects, and that the architects' certificates should not be payable until all the subcontractors and material workers should be paid were abandoned and rescinded; that the requirement that the balance of the contract price in excess of the cash payment mentioned in the final payment specified in said contract should be payable in two promissory notes upon completion of the work was waived; and they mutually agreed in substitution thereof that the said balance of the contract price should be paid to plaintiff in installments as the work progressed, as follows: The reasonable value of such of the labor and materials included in the contract as should be performed and furnished by plaintiff during each month beginning with the 1st day of March, 1907, and thereafter, should be paid for by said defendants on the 1st day of the following month until the balance of said contract price was fully paid; provided, however, that the work thus done during the months of March and April, 1907, should be paid for on the 1st day of May, 1907, and then and there, as part of said agreement, defendant Murray made and delivered to plaintiff in part payment of said contract price and of work done by plaintiff theretofore his promissory notes aggregating $16,000, all of which were subsequently paid except one of said notes for $1,000, which Murray refused to pay; that the making of said notes and all payments after the 1st of March were made without the architects' certificates; that the total reasonable value of the work performed and materials furnished pursuant to said contract and as aforesaid between the 18th of August, 1906, and the 2d of July, 1907, and which were actually performed and furnished on said 2d of July,

1907, was $98,858.70; that on said date plaintiff had duly completed said contract as modified, except the furnishing of certain other labor and materials which were of the reasonable value of $1,263, and which by said contract were stipulated to be furnished and performed thereafter; that the plaintiff performed certain extra work and furnished certain extra materials which were reasonably worth the sum of $11,-649.96 which defendant agreed to pay; that the total reasonable value of the labor and materials included in the contract which were performed and furnished between the 1st day of March, 1907, and the 2d day of July, under the contract as modified, was $17,955.35; that under the terms of said contract, as thus modified, said sum was due and payable to plaintiff on said 2d day of July, 1907, and that the total reasonable value and agreed price of the extra work and materials furnished before said day amounted to $11,649.96, and that no part of either sum was then paid; that the total reasonable value of the work performed and materials furnished both under the written contract and in addition thereto which had not been paid for on the 2d day of July was $41,605.31, but that certain notes were thereafter paid, and the judgment demanded was for $30,605.31.

The plaintiff admits that he did not complete the work to the extent of $1,263, and that on the 2d of July, 1907, he ceased work, but he claims that as the defendant had breached the agreement as modified in March, under which he was to be paid at the 1st of each month the fair and reasonable value of the work theretofore performed, he was justified, upon defendant's refusal to pay, in ceasing work and in suing for the amount then due.

The court found that the written and sealed agreement was the only agreement between the plaintiff and the defendant; that on July 2, 1907, the plaintiff had not completed the work covered thereby; that the extra additional work was governed by all its provisions; that in the month of June the plaintiff demanded the sum of $10,000 in cash on account of the contract price which Murray refused to pay; that on said date the plaintiff abandoned the said written agreement, leaving the same uncompleted because of the refusal of said defendant Murray to pay the $10,000 in cash; that prior to said date plaintiff had received a sum in excess of $57,250, to wit, the sum of $79,903.-35, for and on account of all the work performed and material furnished under said agreement, of which amount $64,903.35 was paid in cash and $15,000 in promissory notes which were paid; that, when plaintiff demanded payment of the said sum of $10,000 and abandoned said agreement, no further additional sums were due or payable to the plaintiff for or on account of all work performed, and under and pursuant to said agreement, and dismissed the complaint.

The uncontradicted testimony shows that material changes in the provisions of the written contract were made at the suggestion of the defendant Murray and agreed to by the plaintiff. The important change was the elimination of the architects and the requirement as to their certificate. Murray had a dispute with them, and instructed plaintiff not to submit estimates of the work done to them. Plaintiff, however, insisted on doing so until all the moneys that were to be paid

by the landlord, the Dunmore Realty Company, had been paid, because, as he told Murray, he could not get such moneys without the certificate. After that, however, he followed Murray's instructions, and no architect's certificates were furnished prior to the subsequent payments by Murray, $3,000 on March 7th, $2,000 on March 14th, and $16,000 in notes on March 21st.

The method of payment was also changed by mutual agreement. Murray told him to render bills on the 1st of every month, that he would pay on or about the 1st for the work done during the preceding month. In the latter part of February Murray said that he did not want any bills on the 1st of April. "When the 1st of May comes send me your bill for the work done during the prior months of March and April and we will take it up, and I will see you will get your money quick." No money was paid in May nor June. In June the work was practically completed. "At the end of June I went to Murray and told him, unless I got some money, I was going to stop. I had gone far enough and deep enough into this job. Mr. Murray refused to pay me. * * * He told me to go to court and get it, that would be the place for me. The men were taken off July 2d. * * * The $10,000 would have been the balance of the contract price and the payment would be in full for May and June. There was also considerable extra work which amounted to $11,649."

The court dismissed the complaint at the close of the plaintiff's case, first, as to the contract work because all the money to be paid under the contract before final completion had been paid, on the ground that the parol modification was not valid, and plaintiff was not entitled to payment until completion; second, as to the extra work, on the ground that it was governed by the contract, and was not payable until the contract work had been completely performed.

Notwithstanding the fact that both parties had acted upon the agreed modifications, defendant Murray having paid large sums in accordance with the modifications, and the plaintiff having followed Murray's orders and directions, the question is, Were the provisions of the sealed contract legally and effectually modified?

[1, 2] It is the rule in this state that a written contract under seal cannot be modified by a subsequent executory parol agreement. So far as such agreement has been executed, it is binding, and money paid thereunder may not be recovered. But so far as it is still executory it may be repudiated, and the terms of the original contract enforced. Kromer v. Heim, 75 N. Y. 574, 31 Am. Rep. 491; Smith v. Kerr, 108 N. Y. 31, 15 N. E. 70, 2 Am. St. Rep. 362; McKenzie v. Harrison, 120 N. Y. 260, 24 N. E. 458, 8 L. R. A. 257, 17 Am. St. Rep. 638; Hayne v. Sealy, 71 App. Div. 418, 75 N. Y. Supp. 907; Interrante v. Levinson, 129 App. Div. 495, 113 N. Y. Supp. 1082; Zindler v. Levitt, 132 App. Div. 397, 116 N. Y. Supp. 726; Delehanty v. Dunn, 151 App. Div. 695, 136 N. Y. Supp. 193.

The appellant attempts to avoid the effect of these cases by the claim that a sealed instrument may be effectually modified by an executory parol agreement upon sufficient consideration, and cites Stewart v. Keteltas, 36 N. Y. 388, and McCreery v. Day, 119 N. Y. 1, 23 N. E. 198, 6 L. R. A. 503, 16 Am. St. Rep. 793. Assuming the claim

to be sound, we cannot find in this case sufficient consideration to support the alleged agreement. It does not begin to be as strong as that urged in Smith v. Kerr, 108 N. Y. 31, 15 N. E. 70, 2 Am. St. Rep. 362, which was brushed aside by the Court of Appeals.

It follows that so far as unexecuted the alleged modification is not an effective alteration of the contract; and, it being conceded that the plaintiff did not complete, the court was justified in deciding against the plaintiff in so far as his cause of action was for a recovery for work done under the contract.

[3] But the plaintiff proved a large amount of extra work entirely outside the contract, performed upon the express orders of the defendant Murray. No claim was made upon the trial that this extra work was not done properly, at Murray's request, nor as to the price thereof as stated. This claim was also disposed of by the trial court upon the same basis as the claim for work under the contract. Here, we think, was error. There is no provision whatever in the contract governing extra work, nor is extra work mentioned or alluded to or provided for. Hence, being extra work and being outside of the contract, it could not come within the provisions thereof or be governed by the clause in regard to payment upon full completion. Langley v. Rouss, 185 N. Y. 201, 77 N. E. 1168, 7 Ann. Cas. 210, cited by respondent, does not apply, because in the contract there under consideration there were express provisions governing extra work. Clearly a great part of the extra work sued for comes within the definition of Shields v. City of New York, 84 App. Div. 502, 82 N. Y. Supp. 1020, as "work arising outside of and entirely independent of the contract; something not required in its performance and as to such work plaintiff is entitled to recover, although he did not complete his contract." Woodward v. Fuller, 80 N. Y. 312; Garnsey v. Rhodes, 18 N. Y. Supp. 484, affirmed 138 N. Y. 461, 34 N. E. 199. See, also, Hedden Construction Co. v. Rossiter Realty Co., 136 App. Div. 601, 121 N. Y. Supp. 64.

It follows, therefore, that the judgment entered upon a dismissal of the complaint should be reversed, and a new trial ordered for so much of plaintiff's cause of action as comprises the claim for extra work, with costs and disbursements to the appellant to abide the event. All concur.